**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-2359

AERO-METRIC INCORPORATED; TRIATHLON LTD.,
f/k/a TRIATHLON MAPPING; PHOTO SCIENCE, INC.,

Plaintiffs,

v.

CENTRO DE RECAUDACIONES DE INGRESOS MUNICIPALES (CRIM),

Defendant, Cross-Claimant, Appellant,

UNIVERSAL INSURANCE CO.,

Defendant, Cross-Claimant, Appellee,

ENTEC CORPORATION, INC.; CONSULTA ECONOMICA Y PLANIFICACION,
INC.; HECTOR RIVAS & ASOCIADOS (HRA); TOMMY HABIBE; CHICORP
FINANCIAL SERVICES; ANALYTICAL SURVEYS INCORPORATED; EASTCAM
GEOMATICS LIMITED; MANUFACTURERS AND TRADERS TRUST COMPANY, not
individually but solely in its capacity as Trustee; JAMES W.
SEWALL COMPANY; AMERICAN BONDING COMPANY; LIBERTY MUTUAL
INSURANCE COMPANY,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Fernando Van Derdys, with whom Law Offices of Fernando Van Derdys was on brief, for cross-claim appellant.

Eduardo Castillo-Blanco, with whom Law Offices of Ivan M. Fernandez was on brief, for cross-claim appellee.

———————————————

July 8, 2005

———————————————

**Per Curiam**.    Appellant Centro de Recaudaciones de Ingresos Municipales (CRIM) appeals from a summary judgment denying its claim under a surety contract, issued by appellee Universal Insurance Company, on which it was a named obligee.  The procedural history of the case is complicated, but we will confine ourselves to the essentials, which are relatively straightforward.

On August 18, 1995, Universal agreed to act as a surety to ENTEC Corporation, the general contractor hired by CRIM to design, furnish, and install a Land Information Management System. Accordingly, Universal simultaneously issued a Performance Bond, which guaranteed to CRIM the general performance of the contract (up to the penalty specified in the bond), and a Labor and Material Payment Bond, which guaranteed the payment of subcontractors (again, up to the penalty specified in the bond).  Each bond was given the number 000-41867, named ENTEC as the principal and CRIM as the obligee, and was issued with a bond penalty sum in the amount of $501,750.00 -- apparently, a small fraction of the value of the project.  Effective October 16, 1996, ENTEC and Universal executed an endorsement "[t]o be attached to and form part of bond no. 000-41867 issued on behalf of [ENTEC] as Principal and in favor of [CRIM] as Obligee in the amount of ONE MILLION THREE THOUSANDS FIVE HUNDRED AND 00/100 Dollars ($1,003,500.00)."  The endorsement added Chicorp Financial Services "AS ADDITIONAL OBLIGEE UNDER CAPTIONED BOND."

In May 2000, a number of subcontractors brought the underlying lawsuit alleging, inter alia, breach of contract. CRIM and Universal were named defendants. On May 31, 2002, Universal filed a motion for consent and/or declaratory judgment asking the district court to decree its liability on bond no. 000-41867 to be the penalty sum of $501,750.00 and to dismiss all claims against it with prejudice, subject to it paying the judgment amount to the court. On September 17, 2002, the court entered the requested judgment and, on October 1, 2002, Universal deposited $501,750.00 with the court.

Shortly thereafter, however, CRIM cross-claimed against Universal under the Performance Bond in the amount of $501,750.00. Universal moved to dismiss the cross-claim, CRIM opposed, and several additional filings ensued. The parties' dispute centered around whether the $501.750.00 penalty set forth on the Performance Bond and on the Labor and Material Payment Bond was Universal's total liability as surety, or whether Universal was separately obligated in the amount of $501,750 under each bond, in which case the amount deposited with the court would not reflect Universal's total liability.

Universal pointed to the Supreme Court of Puerto Rico's decision in Caguas Plumbing, Inc. v. Continental Constr. Corp., 2001 JTS 169 (2001), where the Court in dicta evinced an understanding that a surety's liability under similar,

-3-

simultaneously issued Performance and Labor and Material Bonds was the single amount listed on each bond. CRIM countered that the surety contract at issue here materially differed from that considered in Caguas Plumbing by pointing to the endorsement, which stated that Universal's liability was twice the $501,750.00 specified in each bond, or $1,003,500.00. Along these same lines, CRIM also mentioned, without elaborating why it should matter, the fact that the project cost far more than Universal's potential liability under either reading of the contract. Universal responded with a sworn statement from Iris M. Rivera-Menéndez, Universal's Surety Department Manager, which averred that the sole purpose of the endorsement was to name Chicorp Financial Services as an additional obligee under bond no. 000-41867, that no additional premium was charged for the issuance of the endorsement, and that the endorsement did not alter the amount of Universal's monetary liability in any way.

Treating the motion to dismiss as one for summary judgment and finding the Caguas Plumbing decision to be dispositive, the district court entered judgment in favor of Universal. The court's brief opinion explaining the judgment made no mention of the endorsement or the fact that the contract covered only a fraction of the project's cost.

On appeal, CRIM makes intertwined arguments, which may be addressed together, that the district court improperly resolved on

summary judgment a material factual issue -- the intent of the parties to the surety contract with respect to the total liability issue. In developing its position, CRIM relies on the endorsement, which, it says, constitutes trialworthy evidence that the parties intended Universal's total liability to be $1,003,500.00. (CRIM also again adverts to the fact that the project's cost far exceeded Universal's liability, but fails to explain why this is relevant).

Universal responds by pointing out that Rivera's sworn statement, the upshot of which is that the total liability specified in the endorsement was a mistake, is uncontradicted. And with the endorsement out of the picture, Universal says, we should proceed on the same assumption as did the Caguas Plumbing court -- that the surety contract contemplated that Universal would be liable only for the single penalty listed in each of the two bonds (which together form a single agreement). Without disputing that surety contracts involving the simultaneous issuance of Performance and Labor and Material Payment Bonds usually give rise only to the single penalty specified in each bond, CRIM replies that we should not treat the Rivera sworn statement as dispositive on the issue of the parties' intentions because Universal still controls, and has not made available, the relevant documents regarding the parties' intentions and the premiums paid.

We start with CRIM's last point -- that Universal is in control of the documentation that might permit it to dispute

Rivera's sworn statement. Perhaps this is so, but CRIM did not object to (and does not now complain of) the district court's decision to treat Universal's motion to dismiss as one for summary judgment. Nor did CRIM seek to invoke Fed. R. Civ. P. 56(f) to conduct the relevant discovery. Thus, CRIM lacks a basis to complain about the state of the record, and we are constrained to accept what Rivera says: that the gratuitously provided endorsement merely added Chicorp as an additional obligee under the surety contract and worked no change in Universal's underlying liability. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This leads us swiftly to conclude that the district court did not err in concluding that Universal met its summary judgment burden. While we think that the court read too much into the Caguas Plumbing decision -- the issue presented here was not joined in that case -- CRIM has provided us with no basis for questioning the Caguas Plumbing court's premise that a surety who simultaneously issues Performance and Labor and Material Payment Bonds as part of a single surety contract is only liable for the single penalty amount specified in each bond. See Caguas Plumbing, P.R. Offic. Trans. at 4. In any event, the premise strikes us as quite sensible. On a $1,000,000 project, it is easy to see how a contractor (and thus a surety, see 10 Appleman, Insurance Law & Practice, § 5856 (1981) (making clear that the obligations of a

-6-

surety on a public contractor's bond is commensurate with that of the contractor)) could be liable for up to $1,000,000 to various subcontractors, or up to $1,000,000 to the obligee.  But it is more difficult to see how, absent unforeseen circumstances such as cost overruns (which are circumstances against which a surety agreement does not insure), the contractor could end up being liable in the amount of $1,000,000 to both.  After all, the value of any work done by the subcontractors towards completion of the project (and within the project's specifications) would reduce the contractor's ultimate liability to the project's owner by that same amount.  Thus, $500,000 worth of work by the subcontractors would be $500,000 worth of work not owed to the project's owner.

In closing, we acknowledge that, unlike the situation in Caguas Plumbing, the penalty specified in the Performance and Labor and Material Payment Bonds constituted only a fraction of the project's cost.  But CRIM has failed to explain, and we do not see, why that fact should matter.

**Affirmed**.